**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBIN J. DIGGS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-4827** |
| | : | |
| **BUCKS COUNTY,** *et al.*, | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**SCHMEHL, J. /s/ JLS**                                   **FEBRUARY 18, 2025**

Robin J. Diggs, a prisoner currently in custody at SCI Chester, filed this civil rights action against Bucks County, several employees of the Bucks County Correctional Facility ("BCCF"), two detectives of the Bucks County District Attorney's Office, PrimeCare Medical, Inc. ("PrimeCare"), and several employees of PrimeCare.[1]  Each individual Defendant is named in their individual and official capacities.  Diggs also seeks leave to proceed *in forma pauperis* and requests appointment of counsel.  For the following reasons, the Court will grant Diggs leave to proceed *in forma pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Diggs will be granted leave to file an amended complaint.  The motion to appoint counsel will be denied at this time as premature.[2]

---

[1] The Complaint names 36 Defendants in total including numerous "John Doe" Defendants. (Compl. at 2-3, 12-14).

[2] *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (before exercising discretion to appoint counsel "the district court must consider as a threshold matter the merits of the plaintiff's claim").

## I.    FACTUAL ALLEGATIONS[3]

Diggs alleges that on January 16, 2023, while incarcerated as a pretrial detainee at the BCCF, he woke up to the sound of corrections officers banging on the door of his cell and ordering Diggs or his cellmate to unblock the cell window.  (Compl. at 4, 15.)  After receiving no response, the officers began opening the cell door.  (*Id*.)  Diggs was in possession of "numerous drugs," including Fentanyl and, in an attempt to hide the contraband, he swallowed a balloon containing the drugs.  (*Id*.)  Diggs subsequently learned that his cellmate had died in the night from an overdose using the same drugs.  (*Id*.)

Diggs was interrogated by Defendants McLeod and Onisick, investigators for BCCF, and Defendants Gorman and Naftulin, detectives for the Bucks County District Attorney's Office.  (*Id*.)  Realizing that he had ingested "100 plus times the amount of drugs ([i]ncluding Fentanyl)" that had caused his cellmate to overdose, Diggs admitted to the four Defendants that he had ingested the balloon containing the drugs and stated that he "wanted them out."  (*Id*. at 15-16.)  Instead of taking him for medical treatment, the Defendants ordered Diggs placed in a Restricted Housing Unit ("RHU") cell under a so-called "contraband potty watch," where he was kept without running water or a working toilet for four days.  (*Id*. at 16-17.)  Diggs requested medical care from unnamed nurses employed by PrimeCare but was denied.  (*Id*.)  Eventually, the balloon of drugs "busted/ruptured inside [Diggs's] body" and he overdosed.  (*Id*. at 17.)  Diggs was then taken to the hospital, where he was placed on a ventilator and in a drug-induced coma until doctors could remove the drugs from his body.  (*Id*. at 18.)  Diggs was ultimately released after 11 days, with no

---

[3] The factual allegations set forth in this Memorandum are taken from the Complaint (ECF No. 1).  Diggs also attaches as exhibits copies of his grievances and appeals regarding the incident, along with the institutional responses.  (Compl. at 21-27.)  The Court deems the entire submission to constitute the Complaint and adopts the sequential pagination supplied by the CM/ECF docketing system.

memory of the events for several months afterwards; he still suffers from "trouble recollecting the past." (*Id.*) While he was being held in the RHU, Diggs contends he was assaulted by unspecified BCCF officers, under "orders from Sergeant's [sic], Lieutenants, and Captain defendant" but offers no specifics about the alleged incident. (*Id.*)

The Complaint alleges that Defendants BCCF Director Kratz, Assistant Director Coyne, Warden Metellus, Deputy Warden Reed, and Deputy Warden Jeff Cantino "acted in concert with other defendants by authorizing, through tacit approval, acquiescence, verbal command, or actual Rubber stamping the use of Bucks County B.C.C.F. Policy/Custom Contraband 'Potty' Watch" which caused Diggs to be denied necessary medical treatment for four days. (*Id.* at 19.)

Diggs asserts constitutional claims against the Defendants. (*See generally id.*) He seeks compensatory damages from all Defendants, punitive damages against all Defendants except for Bucks County and PrimeCare, and injunctive relief to end the contraband "potty watch" policy at BCCF or order "special medical attention/treatment for all humans at B.C.C.F. subjugated by the policy/custom contraband 'potty' watch." (*Id.* at 5.)

## II.    STANDARD OF REVIEW

The Court grants Diggs leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court

will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)) *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Diggs is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

Also, when allowing a plaintiff to proceed *in forma pauperis* the Court must review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## III.    DISCUSSION

Diggs asserts constitutional claims. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and

must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

### A.    Lack of Personal Involvement

Diggs names as Defendants Sgt. Cruz, Captain Nottingham, Officer Hickman, Officer Williams, Officer Cancel, Officer Hernandez, Nurse Katie, Dr. Gessner, and Nurse Kristen, but asserts no allegations in the body of his Complaint about how each of these people were involved in the incidents he describes.  For this reason, the claims against them are not plausible.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  The claims against Sgt. Cruz, Captain Nottingham, Officer Hickman, Officer Williams, Officer Cancel, Officer Hernandez, Nurse Katie, Dr. Gessner, and Nurse Kristen will be dismissed; however, Diggs will be permitted an opportunity to file an amended complaint to describe how these individuals were involved with his claims.

The Complaint likewise refers at times to "Defendants" and "other defendants" without specifying which individuals are involved, what they did, or when.  (*See*, *e.g*., Compl. at 19.)  As noted above, the Complaint must contain sufficient facts for the Court to "draw the reasonable inference that [every named] defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678*; see also Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged'")   Diggs's vague assertions as to groups of unspecified defendants are insufficient to state a claim as to any named Defendant.  Other than those Defendants specifically discussed herein against whom Diggs asserts identifiable claims, the balance of the Defendants named in the caption are dismissed without prejudice.

The Complaint also lists various Defendants as John Doe or Jane Doe.  Doing so at this stage is permissible.  *See Blakeslee v. Clinton Cnty*., 336 F. App'x 248, 250 (3d Cir. 2009) ("Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified.")  However, if Diggs files an amended complaint and names multiple John or Jane Doe defendants, he must be careful to specify which unknown defendant he refers to in any given allegation so that each unknown person's role in the incident is clear.  Unless the Court has sufficient facts to infer that a given, specific Doe defendant has violated Diggs's constitutional rights, they will be dismissed from this action.

### B.    Fourteenth Amendment Conditions of Confinement

Diggs asserts that for a period of three to four days he was held in a cell in the RHU without running water, ready access to drinking water, or a functioning toilet.  (Compl. at 16.)  He "was forced to sit in the cell with urine and feces for days without being able to flush the toilet or shower/wash up because there was no water."  (*Id*.)  During that time, Diggs "sat in the cell . . .

with an officer sitting in front of the cell watching [him] 24 hours a day" as part of a contraband "potty watch." (*Id.* at 17.)  The Court understands Diggs to be asserting Fourteenth Amendment conditions of confinement claims.

The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees.  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).  "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (*abrogation on other grounds recognized by Fisher*, 115 F.4th 197) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017).  Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.").  Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that

"such considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3.

Diggs was held in a "dry cell" while prison officials waited for the drug-filled balloon to pass from his body. As explained by the United States Court of Appeals for the Third Circuit,

> A "dry cell" is a cell that lacks water — all standing water has been drained from the toilet, the room's water supply has been shut off, and the sink and toilet have been capped to prevent inmate access. An inmate may be placed in a dry cell when prison staff have observed the inmate attempt to ingest an item of contraband or they learn that the inmate is attempting to introduce contraband into the prison. Dry cells are used to closely observe the inmate until natural processes allow for the ingested contraband to be retrieved. To this end, dry cells lack all linens and moveable items other than a mattress, inmates' clothes are exchanged for a simple smock, and their movements are carefully controlled to prevent them from concealing or disposing of any retrievable contraband.

*Thomas v. Tice*, 948 F.3d 133, 137 (3d Cir. 2020). "[E]ven though administrative confinement in a dry cell is unpleasant and often unsanitary, so long as the conditions of that confinement are not foul or inhuman, and are supported by some penological justification, they will not violate the Eighth Amendment." *Id.* at 139, *citing Young v. Quinlan*, 960 F.2d 351, 364-65 (3d Cir. 1992); *see also United States v. Holloway*, 128 F.3d 1254, 1256 (8th Cir. 1997) (dry cell justified when prison officials had reason to believe inmate was smuggling contraband into jail); *but see Palson v. Zaken*, No. 23-1941, 2024 WL 4591443, at *4-*5 (W.D. Pa. Oct. 28, 2024) (finding plausible constitutional violation where plaintiff was placed in a dry cell "naked, shackled and too tightly handcuffed" for four days, exposed to OC spray residue, and officials ignored his complaints of pain); *see also Daniels v. Pitkins*, No. 14-2383, 2017 WL 890090, at *6 (M.D. Pa. Mar. 6, 2017) (finding that denying plaintiff opportunity to clean fecal matter from his hands for four days while in a dry cell amounted to constitutional violation).

Based on the allegations set forth in the Complaint, BCCF staff knew that Diggs had ingested contraband; indeed Diggs himself admitted doing so to prison officials because he

witnessed his cellmate die from the drugs he also ingested.  Diggs thus concedes that officials had a legitimate penological basis for placing him in a dry cell.  *See Tice*, 948 F.3d at 139 (finding an inmate's initial placement in a dry cell reasonable where corrections officer observed plaintiff ingesting what the officer believed was contraband).  While the Complaint describes unpleasant conditions in Diggs's dry cell, he does not allege that conditions in the cell were "foul or inhuman" sufficient to state a Fourteenth Amendment claim.  *See id*.  The Court will therefore dismiss Diggs's conditions of confinement claim under the Fourteenth Amendment, but will permit him to attempt to amend the claim if he can allege additional facts about his confinement in the dry cell that would support a plausible claim.

C.    **Excessive Use of Force**

Diggs alleges in conclusory terms only that he was "assaulted," which the Court understands to be an attempt to state an excessive use of force claim.  Because Diggs was a pretrial detainee during the relevant event, the Due Process Clause of the Fourteenth Amendment governs his excessive force claims.  *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (internal quotation and citation omitted).  To state a due process violation based on excessive force, a pretrial detainee must allege plausibly "that the force purposely or knowingly used against him was objectively unreasonable."  *Id*. at 396-97.  "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  *Id.*  at 397.  Whether unreasonable force has been used against a detainee

"requires 'careful attention to the facts and circumstances of each particular case.'" *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts should analyze "these circumstances 'from the perspective of a reasonable officer on the scene'" while keeping in mind that decisions about force require the expertise of correctional officers, "'who must have substantial discretion to devise reasonable solutions to the problems they face.'" *Id.* at 195 (quoting *Kingsley*, 576 U.S. at 397 & 399).

Diggs's Complaint asserts that he was "assaulted at one point [during his dry cell placement] by officers." (Compl. at 16.) Diggs states he does not know the identities of the officers involved due to memory issues resulting from his drug overdose. (*Id.*) While Rule 8 of the Federal Rules of Civil Procedure "does not require detailed factual allegations . . . naked assertion[s], devoid of further factual enhancement" are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (quotation marks omitted). Diggs does not refer to the actions of any specific correctional officer(s) or attempt to differentiate the roles of John Doe correctional officers, but rather refers to them in the plural. This is insufficient to allege personal involvement. *See Lawal*, 546 F. App'x at 113. Without these basic facts, the court cannot "draw the reasonable inference that [any named] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Accordingly, the Court will dismiss Diggs's Fourteenth Amendment excessive force claim without prejudice and permit Diggs an opportunity to amend to flesh out this claim.

### D.    Fourteenth Amendment Denial of Medical Care

Diggs alleges claims for denial of medical care against Defendants Gorman, McLeod, Onisick, Naftulin, and unspecified PrimeCare nurses based on their failure to provide Diggs prompt medical care when they learned that he had ingested a balloon containing a large quantity of drugs, including Fentanyl. (Compl. at 15-18.) To state a constitutional claim based on the

failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").[4]  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Diggs alleges that despite advising Defendants Gorman, McLeod, Onisick and Naftulin that he had ingested the balloon with a potentially lethal quantity of drugs, they did not take him for medical treatment and instead ordered him to be placed in an RHU cell to wait for the contraband to pass through him.

---

[4] Because Diggs was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard*, 399 F.3d at 166.  However, the standard under the Eighth Amendment applicable to convicted prisoners and under the Fourteenth Amendment applicable to detainees for claims related to medical needs are essentially the same for purposes of the analysis. *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).

### 1.    Defendants Gorman and McLeod

As to Defendants Gorman and McLeod, the Court considers first whether Diggs has met the objective prong of the deliberate medical indifference analysis.  *See Stevenson*, 495 F.3d at 68 ("[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious. . . .).  Taking the allegations in the Complaint as true, Diggs alleges deliberate indifference after he "secreted" drugs inside his body (Compl. at 15), apparently by ingesting a balloon containing a large quantity of several drugs, including Fentanyl, which is commonly known to be lethal at even small doses, and was placed in the dry cell on "potty" watch so that officials could attempt to recover the contraband.  (*Id*. at 16-17.)  Diggs also alleges that his cell-mate had died from taking drugs.  (*See id*. at 15.)  The drugs in the balloon ultimately caused Diggs to overdose and nearly die "several days" after his questioning by Gorman and McLeod when the balloon "busted/ruptured" while still inside his body.  (*Id*. at 17-18.)

Diggs's claim against Gorman and McLeod is not plausible as alleged.  He alleges only that Gorman and McLeod questioned him and learned about him ingesting the balloon several days before his medical emergency began when the balloon burst.  Diggs does not allege that during the time he spent with these Defendants that he was experiencing a serious medical need.  He only alleges that there was a potential that a serious condition could arise.  He was then on "potty" watch in the RHU for the next four days, but he does not allege that Gorman and McLeod were personally involved in observing him during this time.  Given the alleged progression of events, Diggs fails to allege plausibly that Gorman and McLeod were objectively indifferent to a serious medical need.  Diggs will, however, be permitted an opportunity to file an amended complaint to allege additional facts about these Defendants' personal involvement in a deliberate denial of medical care at the point in time that the need became serious.

### 2. Defendants Onisick and Naftulin

At the time Defendants Onisick and Naftulin interrogated Diggs, he was in the custody of BCCF.  (Compl. at 15-16.)  Neither Onisick and Naftulin, nor their employer the Bucks County District Attorney's Office, were therefore primarily responsible for Diggs's safety and medical care at that time.  *See Graham v. Pennsylvania Dep't of Health Div. of Vital Recs.*, No. 21-846, 2021 WL 8101375, at *4 (W.D. Pa. July 16, 2021) (finding "no case law to support an Eighth Amendment claim against Defendant, as it is a government agency having no relationship with Plaintiff, and a non-prison official with no authority over Plaintiff's conditions of confinement"), *report and recommendation adopted*, 2022 WL 1173191 (W.D. Pa. Apr. 20, 2022); *see also Vanordern v. Bannock Cnty.*, 2016 WL 3566197, at *2 (D. Idaho June 27, 2016) (holding police officers could not be held liable on a deliberate indifference claim where the officers "were no longer involved in [the plaintiff's] custody"); *Van Smith v. Franklin*, 286 F. App'x 373, 374-75 (9th Cir. 2008) (holding that plaintiff could not state a deliberate indifference claim against officials that "had no official influence over the conditions of Plaintiff's confinement," but also noting that said officials "relayed Plaintiff's safety concerns to the appropriate officials at the jail"); *but see Williams v. Bd. of Cnty. Comm'rs of Grady Cnty.*, No. 13-759, 2014 WL 5039821, at *5 (W.D. Okla. Oct. 8, 2014) (holding plaintiff stated a plausible deliberate indifference claim against two police officers for not alerting prison officials that plaintiff was a suicide risk).

Even assuming Defendants Onisick and Naftulin could be held liable for the conditions of Diggs's confinement, Diggs's claim is not plausible for the same reasons discussed above as to Defendants Gorman and McLeod.  Diggs does not allege he was experiencing a serious medical need when Onisick and Naftulin questioned him.  That need only arose several days later, when the drug balloon burst in Diggs's body and caused an overdose; Diggs does not allege that either

Defendant was present or denied him necessary medical care at that time. Diggs will be permitted an opportunity to file an amended complaint to allege additional facts demonstrating these Defendants' personal involvement in the denial of medical care at the point when Diggs's need became serious.[5]

### 3.    PrimeCare Nurses

Diggs alleges that after four days in the RHU cell the drug-filled balloon he ingested burst. He claims that, before this happened, PrimeCare nurses "refused to sign off on emergency medical treatment/care" while he was in the RHU on "contraband potty watch" and he claims they were aware that Fentanyl is a deadly drug. (Compl. at 16-17.) Taking all inferences in Diggs's favor, he appears to assert that the nurses refused to have the drugs surgically removed from his body and, instead, waited to see if he would pass the balloon from his body through natural processes. (*Id*. at 17.) This claim is not plausible as pled because Diggs does not identify any specific nurses—even as "Doe" Defendants—who denied him medical treatment. Instead, the Complaint refers only to "Nurses of PrimeCare Medical, Inc." (*Id*.)

---

[5] Leave to amend as to Defendants Onisick and Naftulin is limited to any claims in their individual capacities. While Diggs named them in both their individual and official capacities in the Complaint, any official capacity claim against them is dismissed with prejudice because "the Third Circuit has held that district attorney's offices in Pennsylvania are not entities subject to suit under § 1983. *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) (holding that "the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability"); *see also Briggs v. Moore*, 251 F. App'x 77, 79 (3d Cir. 2007) (*per curiam*) ("[T]he Monmouth County Prosecutor's Office is not a separate entity that can be sued under § 1983."); *Harper v. City of Philadelphia*, No. 18-365, 2018 WL 5784549, at *2 (E.D. Pa. Nov. 2, 2018) ("District courts within the Third Circuit disagree about whether the DAO is a separate entity from the City of Philadelphia such that it can be sued separately under § 1983."). *But see Quintana v. City of Philadelphia*, Civ. A. No. 17-996, 2017 WL 3116265, at *4 (E.D. Pa. July 21, 2017) ("Quintana may sue the District Attorney's Office in addition to the City."); *Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694, 711-12 (E.D. Pa. 2015) ("[T]he Court concludes that neither § 16257 nor *Reitz* bars suit against the D.A.'s Office under the circumstances of this case.").

The list of defendants includes four PrimeCare nurses: Nurse Kristen, Nurse Katie, Nurse Jane Doe, and Nurse John Doe. However, the Complaint does not specify which of these nurses, if any, knew of Diggs's serious medical condition but nevertheless denied his requests. As previously stated, under Rule 8 "naked assertion[s], devoid of further factual enhancement" are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (quotation marks omitted). The Complaint does not refer to the actions of any specific nurses that allegedly violated Diggs's constitutional rights and alleging their actions collectively is not permissible. *See Lawal*, 546 F. App'x at 113. Nor does the Complaint state on what day(s) any of these Defendants were involved with his care and knew he was suffering a serious medical need when the balloon burst. Without these basic facts, the court cannot "draw the reasonable inference that [any named] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Accordingly, the Court will dismiss Diggs's Fourteenth Amendment deliberate medical indifference claim against PrimeCare nurses without prejudice and with leave to amend.

### E.     Supervisory Liability Claims

Digg's Complaint appears to allege that several supervisors at BCCF, including Director David Kratz, Assistant Director James Coyne, Warden Carl Metellus, Deputy Warden Kelly Reed, and Deputy Warden Jeff Cantino were responsible for the constitutional injuries Diggs suffered because they "acted in concert with other defendants by authorizing, through tacit approval, acquiescence, verbal command, or actual Rubber stamping the use of Bucks County B.C.C.F. Policy/Custom Contraband 'Potty' Watch.'" (Compl. at 19.) These claims are also not plausible.

Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted

that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022). Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227.

Beyond conclusory assertions, the Complaint contains no facts to establish that any of these supervisory officials were personally involved in the deprivation of Diggs's rights, or that any of these Defendants were aware that Diggs was suffering a constitutional injury and nevertheless failed to intervene. *Barkes*, 766 F.3d at 316. Because there is no *respondeat superior* liability under section 1983, *see Chavarriaga*, 806 F.3d at 227, the mere fact that these individuals were

supervisors in the chain of command does not make them responsible for constitutional violations allegedly committed by their subordinates. Without any other asserted basis for liability against these Defendants, the Court will dismiss Diggs's claims as to them without prejudice.

Further, to the extent Diggs asserts a due process claim against some of these supervisory defendants based on their role in reviewing or denying his grievances and grievance appeals, those claims also fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)); *see Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."). Accordingly, allegations such as those raised by Diggs predicated on failures of various Defendants to sustain or fully investigate his grievances and appeals do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected

right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

### F.    Claims Against Bucks County

To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation.[6]  *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard.  *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  It is not enough, however, to allege the existence of a policy or custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.*  Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim against the City.  *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).  "It is well-settled that, if there is no violation in the

---

[6] In addition to suing the County, Diggs also asserts claims for monetary damages against County employees in their official capacities.  (Compl. at 13-14.)  Claims against municipal officials named in their official capacity are indistinguishable from claims against the municipality. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dep't. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  Accordingly, to the extent Bucks County employees are sued in their official capacities, any such claims are dismissed as duplicative of the claims against Bucks County.  *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District.")

first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013).

Liberally construed, Diggs asserts that he was injured by BCCF's policy of placing an inmate who was suspected of having ingested contraband in a dry cell for observation until the contraband had passed through his system. As discussed above, the Third Circuit has held that placing an inmate suspected of hiding contraband in a dry cell is constitutional so long as there is a legitimate penological objective for doing so and the conditions are not "foul or inhuman." *See Tice*, 948 F.3d at 139; *Young*, 960 F.2d at 364-65. Based on the averments in the Complaint, BCCF officials had a legitimate penological objective for placing Diggs in the dry cell, and the facts do not establish that the conditions of Diggs's dry cell were "foul or inhuman." Accordingly, the fact that Diggs was placed in a dry cell pursuant to the BCCF policy does not establish a plausible basis for municipal liability. The Court will therefore dismiss Diggs's *Monell* claim against Bucks County with leave to amend.

G.     **Claims Against PrimeCare Medical**

Diggs asserts unspecified claims against PrimeCare Medical, Inc., a private corporation that employs at least some of the medical personnel who interacted with Diggs during the incident giving rise to his claims.[7]  These claims are also not plausible.

---

[7] Diggs also asserts claims for monetary damages against employees of PrimeCare in their official capacities, however such claims are not cognizable because PrimeCare is a private entity. *See Kreis v. Northampton Cnty. Prison*, No. 21-2360, 2022 WL 4236692, at *8 (E.D. Pa. Sept. 14, 2022) (stating that official capacity claims are "inapplicable to suits against private parties where the entity is also susceptible to suit") citing *Owens v. Connections Cmty. Support Programs, Inc.*, 840 F.Supp.2d 791, 796 (D. Del. 2012) ("Generally, a suit against a [ ] public officer in his or her official capacity is used to compel that officer to take some official action [and that] concept . . . is inapplicable to suits against private parties where the entity is also susceptible to suit.").

A private corporation under contract to provide medical services at a jail or prison may be liable under § 1983 in certain circumstances. The Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale*, 318 F.3d at 583 (applying *Monell* to claims against medical contractor)). Rather, in order to hold a private health care company like PrimeCare liable for a constitutional violation under § 1983, Diggs must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d 575, 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted).

A plaintiff may also state a basis for liability against an entity like PrimeCare by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019).

The Complaint does not identify any PrimeCare policy or custom that allegedly caused Diggs's constitutional injury.  Rather, the Complaint alleges that, "Nurses of PrimeCare Medical, Inc. refused [Diggs] medical treatment and refused to sign off for emergency medical treatment/care for [his] serious medical need.  Choosing instead to be a party to . . . Bucks County Correctional Facility Policy/Custom called (Contraband 'Potty' Watch)."  (Compl. at 16-17.) Thus, the Complaint appears to assert that PrimeCare employees were acting, if at all, pursuant to a BCCF policy, rather than a PrimeCare policy.  The Complaint therefore does not state facts to support a *Monell* claim against PrimeCare Medical Inc., and this claim will be dismissed with leave to amend.

### H.    Claims for Injunctive Relief

Finally, the Complaint seeks injunctive relief, specifically elimination of the "contraband potty watch" policy at BCCF and some unspecified special treatment for inmates who were previously subject to the "contraband potty watch" policy.  (*Id*. at 5.)  Because Diggs is no longer detained at BCCF, his request for injunctive relief raises jurisdictional mootness issues.

The Court's continuing obligation to assure its jurisdiction includes an assessment of whether a claim has become moot.  *See Seneca Res. Corp. v. Twp. of Highland, Elk Cty., Pa.*, 863 F.3d 245, 252 (3d Cir. 2017) ("Our 'continuing obligation' to assure that we have jurisdiction requires that we raise issues of standing and mootness sua sponte.").  "An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."  *Sutton v. Rasheed,* 323 F.3d 236, 248 (3d Cir. 2003) (*c*iting *Abdul–Akbar v. Watson,* 4 F.3d 195, 197 (3d Cir. 1993)).  "[A] limited exception to the mootness doctrine applies only when '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable likelihood that the same complaining party would be subjected to the same

action again.'" *Griffin v. Beard*, 401 F. App'x 715, 716 (3d Cir. 2010) (citing *Abdul–Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir.1993)) (citation and internal quotation marks omitted).  Neither of these exceptions applies here.  Diggs alleges that the challenged BCCF policy remains in effect and therefore the challenged action was not "in its duration too short to be fully litigated prior to is cessation."  There is also no reason to suspect at this time that Diggs will be transferred back to BCCF such that he would again be subject to the BCCF policy.  Accordingly, Diggs's claims for injunctive relief will be dismissed without prejudice as moot.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Diggs's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as to all Defendants.  Diggs's official capacity claims against individual Defendants will be dismissed with prejudice.  Diggs will be afforded an opportunity to file an amended complaint if he is capable of correcting the defects the Court has identified in his various Fourteenth Amendment claims and his *Monell* claims.  An appropriate Order with additional information about amendment will be entered separately.